00/00/2013  12:19:27 FAX 2132499990          NATIONWIDE LEGAL

# COPY

1 | DARON L. TOOCH (State Bar No. 137269)
E-Mail:  dtooch@health-law.com
2 | KATHERINE M. DRU (State Bar No. 280231)
E-Mail:  kdru@health-law.com
3 | **HOOPER, LUNDY & BOOKMAN, P.C.**
1875 Century Park East, Suite 1600
4 | Los Angeles, California 90067-2517
Telephone: (310) 551-8111
5 | Facsimile: (310) 551-8181

6 | Attorneys for Bay Area Surgical Group,
Inc., Knowles Surgery Center, LLC,
7 | National Ambulatory Surgery Center,
LLC, Los Altos Surgery Center, LP



FILED
CLERK U.S. DISTRICT COURT

SEP 26 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                            DEPUTY

8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11 | BAY AREA SURGICAL GROUP,
INC.; KNOWLES SURGERY
12 | CENTER, LLC, NATIONAL
AMBULATORY SURGERY
13 | CENTER, LLC, LOS ALTOS
SURGERY CENTER, LP,
14 |
15 |        Plaintiffs,
16 |
vs.
17 | UNITED HEALTHCARE SERVICES,
INC.; UNITED HEALTHCARE
18 | INSURANCE COMPANY;
UNITEDHEALTH GROUP, INC.,
19 | INGENIX, INC., AND DOES 1
THROUGH 10
20 |
       Defendants.
21 |

CASE NO. **CV13-07146**-JAK
(JCx)

**COMPLAINT FOR:**

**1. RECOVERY OF BENEFITS
UNDER 11 U.S.C. § 1132(a)(1)(B);
2. VIOLATION OF THE
RACKETEERING, INFLUENCED
AND CORRUPT ORGANIZATIONS
ACT, 18 U.S.C. § 1962(c);
3. VIOLATION OF THE
RACKETEERING, INFLUENCED
AND CORRUPT ORGANIZATIONS
ACT, 18 U.S.C. § 1962(d)**

Trial Date:        None Set

22

23

24

25

26

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 · FAX: (310) 551-8181

[1146457.1]

COMPLAINT FOR:

1   PLAINTIFFS Bay Area Surgical Group, Inc., Knowles Surgery Center, LLC,

2   National Ambulatory Surgery Center, LLC, Los Altos Surgery Center, LP allege

3   against Defendants United Healthcare Insurance Company, Unitedhealth Group,

4   United Healthcare Services, and Ingenix, Inc. (collectively "United" or the "United

5   Defendants") alleges as follows:

### JURISDICTION AND VENUE

7   1.      This Court has subject matter jurisdiction over this action pursuant to

8   28 U.S.C. § 1331, because the action arises under the laws of the United States;

9   pursuant to 29 U.S.C. § 1332(e)(1), because the action seeks to enforce rights under

10  the Employee Retirement Income Security Act ("ERISA"); pursuant to 18 U.S.C.

11  § 1964(c), because the action concerns violations of RICO; pursuant to the removal

12  jurisdiction conferred by 28 U.S.C. § 1441; and pursuant to 28 U.S.C. § 1367(a),

13  because the State law claims are so related to the federal claims that they form part

14  of the same case or controversy.

15  2.      This Court is the proper venue for this action pursuant to 28 U.S.C.

16  § 1391(b) because a substantial part of the events or omissions giving rise to the

17  claims alleged herein occurred in this Judicial District, and because one or more of

18  the Defendants conducts a substantial amount of business in this Judicial District;

19  and pursuant to 29 U.S.C. § 1132(e)(2) because it is the Judicial District where the

20  breach took place, and because one or more of the Defendants conducts a substantial

21  amount of business in this Judicial District.

### THE PARTIES

23  3.      Plaintiff Bay Area Surgical Group, Inc. is, and at all relevant times was,

24  a California corporation with its principal place of business in Santa Clara,

25  California.

26  4.      Knowles Surgery Center, LLC, is, and at all relevant times was, a

27  California limited liability corporation with its principal place of business in Los

28  Gatos, California.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

5. National Ambulatory Surgery Center, LLC, is, and at all relevant times was, a California limited liability corporation with its principal place of business in Los Gatos, California.

6. Los Altos Surgery Center, LP, is, and at all relevant times was, a California limited partnership with its principal place of business in Los Altos, California.

## The United Defendants

7. PLAINTIFFS are informed and believe that Defendant UnitedHealth Group, Inc. ("UnitedHealth") is a Minnesota corporation with its corporate headquarters located in Minneapolis, Minnesota. UnitedHealth is one of the largest health insurance carriers in the United States.

8. PLAINTIFFS are informed and believe that Defendant United HealthCare Services, Inc. ("United HealthCare") is a Minnesota corporation with its corporate headquarters located in Minneapolis, Minnesota. United HealthCare is wholly-owned by UnitedHealth, and serves as UnitedHealth's operating division. United HealthCare is licensed to conduct insurance operations in California and, on information and belief, every other State in the United States, whether it be under the name United HealthCare or some other operating name.

9. PLAINTIFFS are informed and believe that Defendant United Healthcare Insurance Company ("UHIC") is a wholly owned and controlled subsidiary of UnitedHealth with its principal place of business in Connecticut.

10. PLAINTIFFS are informed and believe that Defendant Ingenix, Inc. ("Ingenix") is a Delaware corporation with its corporate headquarters located in Eden Prairie, Minnesota. Ingenix is a wholly-owned subsidiary of UnitedHealth.

11. UnitedHealth, United HealthCare, UHIC, and Ingenix will be collectively referred to herein as "United" or the "United Defendants."

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111 • FAX. (310) 551-8181

COMPLAINT FOR:

## The DOE Defendants and Amendment

12.     The true names and capacities of the defendants sued herein as DOES 1 through 50 (the "DOE Defendants") are unknown to PLAINTIFFS at this time, and PLAINTIFFS therefore sue such defendants by such fictitious names.  PLAINTIFFS are informed and believe that the DOE Defendants are those individuals, corporations and/or businesses or other entities that are also in some fashion legally responsible for the actions, events and circumstances complained of herein, and may be financially responsible to PLAINTIFFS for the services PLAINTIFFS have provided, as alleged herein.  This complaint will be amended to allege the DOE Defendants' true names and capacities when they have been ascertained.

## AGENCY

13.     PLAINTIFFS are informed and believe that the United Defendants have entered into administrative service agreements or other contracts with self-funded ERISA Plans whereby the United Defendants have agreed to act as agents of the ERISA Plans, and have actual or ostensible authority to act on their behalf for: providing plan documents to plan members; communicating with plan members and healthcare providers, such as PLAINTIFFS; verifying member benefits and eligibility to providers, such as PLAINTIFFS; interpreting plan terms and provisions; receiving PLAINTIFFS' claims; pricing PLAINTIFFS' claims; processing and administering PLAINTIFFS' claims and appeals; approving or denying PLAINTIFFS' claims and appeals; interpreting ERISA plan documents; determining whether and how to pay PLAINTIFFS' claims; issuing remittance advices, claim status reports and explanations of benefits; and making and administering payments.  With respect to every claim at issue in this case, PLAINTIFFS dealt directly with United, submitted the claims for reimbursement to United, communicated about the claims with United, and in many cases received

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

COMPLAINT FOR:

1  payments from United.

2      14.   PLAINTIFFS are informed and believe that, as the appointed agents of

3  the ERISA Plans, United is in possession of all facts, information and data

4  concerning and related to the authorization, processing, determination, pricing,

5  payment, and appeals of all claims submitted by PLAINTIFFS with respect to the

6  benefit plans.

7      15.   PLAINTIFFS are informed and believe that Defendants UnitedHealth

8  Group, United Healthcare Services, and United Healthcare Insurance are proper

9  ERISA defendants because they "effectively controlled the decision whether to

10  honor or to deny a claim . . . ." *Cyr v. Reliance Life Ins. Co.,* 642 F.3d 1202, 1204

11  (9th Cir. 2011) (en banc).  Specifically, with respect to all of the claims at issue

12  herein, including with respect to self-funded plans which have not been named as

13  defendants in this action, PLAINTIFFS are informed and believe that the United

14  Defendants:

15          a.    drafted and provided plan members with plan documents;

16          b.    operated a centralized verification and authorization telephone

17  number which handled calls for members of the ERISA plans, including plans that

18  have not been named as defendants in this Complaint;

19          c.    received and processed electronic bills from PLAINTIFFS for

20  claims for members of the ERISA plans;

21          d.    communicated with PLAINTIFFS on behalf of the ERISA plans

22  regarding authorization of surgical procedures;

23          e.    issued remittance advices and EOBs;

24          f.    priced claims for the ERISA plans;

25          g.    communicated with PLAINTIFFS with respect to the processing

26  of claims on behalf of the ERISA plans;

27          h.    processed appeals, and sent appeal response letters; and

28          i.    in certain cases, issued payment to PLAINTIFFS on behalf of the

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

1146457.1

ERISA plans.

## ASSIGNMENT AND STANDING

16.     As a condition of the provision of services by PLAINTIFFS, each patient signs an agreement assigning his or her health insurance benefits to PLAINTIFFS.  Each assignment of benefits provides for PLAINTIFFS to be paid directly for the services provided to the patient.

17.     PLAINTIFFS received an assignment of benefits for every claim at issue in this litigation.  PLAINTIFFS' standard assignment of benefits reads as follows:

> I, the undersigned, certify that I (or my dependent) have insurance with the above listed carriers, and assign directly to Bay Area Surgical Group, Inc. ("BASG")[1] all insurance benefits, if any, otherwise payable to me for services rendered.  I understand that I am financially responsible for all charges whether or not paid by the insurance carrier(s).  I hereby authorize the doctor and facility to release all information necessary to secure payment of benefits. In addition, I understand that insurance payments made directly to the patient or subscriber for services provided by BASG must be reimbursed to BASG in the form of a check made payable to Bay Area Surgical Group.  I authorize the use of this signature on all insurance submissions.

18.     For every claim at issue in this litigation, Defendants acknowledged and consented to the assignment of benefits, and/or waived any objections to or limitations on the assignment of benefits and the members' right to assign the benefits, by, *inter alia,* receiving and processing PLAINTIFFS' claims, and making and administering payments directly to PLAINTIFFS on such claims.

19.     PLAINTIFFS have standing to pursue the claims for relief in this Complaint as an assignee of the members' benefits under the plans, as a party who has suffered injury in fact and lost money and/or property as a result of the Defendants' conduct, and as a party who rendered services to the members with the knowledge of and at the request of the Defendants and was not appropriately

---

[1] Knowles Surgery Center, National Ambulatory Surgery Center, and Los Altos Surgery Center have similar assignment of benefits.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1146457.1

1 | compensated for the fair market value of those services.

2 |     20.    In *Misic v. Building Services Employees Health & Welfare Trust*, 789

3 | F.2d 1374, 1379 (9th Cir. 1986), the Ninth Circuit determined that a provider who is

4 | "an assignee of [ERISA plan] beneficiaries pursuant to assignments valid under

5 | ERISA, has standing to assert the claims of his assignors" against their health plan.

6 | Similarly, in *In re WellPoint, Inc. Out-of-Network "UCR" Rates Litigation*, 865

7 | F.Supp.2d 1002 (C.D.Cal. Aug. 11, 2011), the court emphasized that "'[a] health

8 | care provider with an allegedly valid assignment [of benefits] has the same standing

9 | [as the beneficiary]' and may bring suit under ERISA." *Id.* at 1042 (quoting

10 | *Davidowitz v. Delta Dental Plan, Inc.*, 946 F.2d 1476, 1477 (9th Cir. 1991) (some

11 | alteration in original)).

## GENERAL ALLEGATIONS

### Services Provided by PLAINTIFFS to Defendants' Members
### and the Nature of the Plans

15 |     21.    PLAINTIFFS are, and at all times relevant to this litigation, were

16 | operating ambulatory surgery centers ("ASCs") that provides medically necessary

17 | health care services related to medical and surgical procedures performed at their

18 | facilities.  At all relevant times relevant to this litigation, PLAINTIFFS were not

19 | contracted with any of the Defendants, nor "participated" in any of their provider

20 | networks.  Thus, PLAINTIFFS are what is known as a "non-contracted" or "out-of-

21 | network" provider with respect to Defendants.

22 |     22.    At all relevant times herein, PLAINTIFFS have provided health care

23 | services to patients who, at the time PLAINTIFFS provided the services, were

24 | members of health benefit plans for which United exercised administrative

25 | responsibilities (such patients shall hereinafter be referred to as "members").

26 |     23.    Individuals and families that receive their health insurance through a

27 | private employer-sponsored health benefit plan are typically participants or

28 | beneficiaries of plans governed by the ERISA.  However, some individuals and

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  families receive their health insurance through an employer-sponsored health benefit

2  plan that is not governed by ERISA, such as a health benefit plan for employees of a

3  government entity.  Individuals and families who do not receive employer-

4  sponsored health insurance often purchase health insurance policies directly from

5  United.

6       24.  PLAINTIFFS are informed and believe that the health benefit plans at

7  issue in this matter are governed by ERISA.

8       25.  PLAINTIFFS are informed and believe that all of the Health Plans at

9  issue permitted their members to obtain medical and surgical services at out-of-

10  network providers, such as PLAINTIFFS.

11       26.  On or about the time that PLAINTIFFS provided the health care

12  services to each of the members, PLAINTIFFS obtained a written assignment of

13  each member's benefits under the Health Plans.

14  **Untied's Roles and Responsibilities With Respect To Claims**

15       27.  United is one of the nation's largest health insurers.  It underwrites and

16  issues thousands of health insurance plans.

17       28.  When individuals and families who do not receive employer-sponsored

18  health insurance purchase health insurance policies directly from United, United

19  typically has sole responsibility and discretion to administer and pay claims

20  submitted under such policies.

21       29.  United also contracts with other entities that provide health benefit

22  plans – such as private employer-sponsored benefit plans, government-sponsored

23  plans, welfare trusts and other sources – in order to provide administrative services.

24       30.  The administrative responsibilities assumed and exercised by United

25  include, but are not limited to, providing plan members with plan documents,

26  providing access to a network of contracted providers, communicating with plan

27  members and health care providers, such as PLAINTIFFS, interpreting and applying

28  plan terms and provisions, making coverage and benefits decisions, processing and

1  adjudicating benefit claims with respect to health care services provided by both

2  contracted (*i.e.*, "in-network") and non-contracted (*i.e.*, "out-of-network") providers,

3  pricing such benefit claims, making and administering payments with respect to

4  such benefit claims, processing and adjudicating appeals of such benefit

5  determinations, functioning as the plans' "Claims Administrator," functioning as the

6  plans' "Plan Administrator," functioning as the Plan Administrator's "designee,"

7  functioning as the plans' *de facto* Plan Administrator, functioning as a co-Plan

8  Administrator, and/or other administrative functions.

9       31.   PLAINTIFFS are informed and believe that United's "network" of

10  providers is generally available to the ERISA Plans.

11       32.   PLAINTIFFS are informed and believe that for the ERISA Plans, the

12  plan typically will enter into an "administrative service agreement" with United to

13  perform certain administrative responsibilities, such as those set forth above.  The

14  administrative services agreements appoint United as a Claims Administrator and a

15  fiduciary, and delegate to United authority, responsibility and discretion to

16  administer claims and make final benefits decisions, based on claim procedures and

17  standards that United develops, and in accordance with the plan terms and

18  conditions as interpreted by United.  PLAINTIFFS are informed and believe that

19  United collects administrative services fees from the Health Plans for performing

20  the administrative functions.  PLAINTIFFS are also informed and believes that the

21  ERISA Plans were fully aware that United was supposed to interpret plan

22  documents, authorize services, and price UCR reimbursement claims on their

23  behalf.

24       33.   PLAINTIFFS are informed and believe that with respect to certain the

25  ERISA Plans, United is designated not just as a Claims Administrator, but also as

26  the Plan Administrator for ERISA purposes.  With respect to those ERISA Plans

27  that do not specifically designate a Plan Administrator for ERISA purposes,

28  PLAINTIFFS are informed and believe that United has functioned as the *de facto*

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1146457.1

Plan Administrator.  With respect to those ERISA Plans, PLAINTIFFS are informed and believe that United has functioned as the designee of the designated Plan Administrator and/or as the co-Plan Administrator.  In each case, United functions as a Plan Administrator insofar as it exercised a delegated authority to provide plan documents to participants, receive benefit claims, evaluate and process benefit claims, review and interpret the terms of the plan, make benefit determinations, make and administer benefit payments, adjudicate appeals of benefit determinations, and serve as the primary point of contact for members and providers to communicate regarding benefits and benefit determinations.  In carrying out these Plan Administrator functions, United possessed authority and fiduciary discretion to manage and administer the ERISA Plans, effectively controls the decision whether to honor or deny a claim, exercises authority over the resolution of benefit claims, and/or has responsibility to pay the claims.

### UCR Reimbursement To Out-Of-Network Ambulatory Surgery Centers

34.    Under some health benefit plans, such as Health Maintenance Organizations ("HMOs"), member benefits are restricted to services provided by in-network providers (except in emergency and other limited circumstances).

35.    In contrast, many health benefit plans, such as Preferred Provider Organizations ("PPOs"), indemnity plans and others, permit their members to access health care providers who are outside the contracted network.  Plans which offer coverage for such out-of-network services, including the services of ASCs, are marketed to prospective members as benefiting them with the freedom and flexibility to choose the health care provider of their choice, including out-of-network providers.  PLAINTIFFS are informed and believe that these plans charge members a higher premium or contribution in exchange for this purported freedom of choice.

36.    PLAINTIFFS are informed and believe that the Health Plans involved in this litigation typically provide that the member has the freedom to choose in-

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111 • FAX. (310) 551-8181

1  network or out-of-network providers, and that covered services provided by out-of-
2  network providers will be eligible for reimbursement pursuant to the out-of-network
3  benefit provisions of the plan.  The Health Plans also typically provide that in-
4  network providers have agreed to accept specifically negotiated, discounted rates for
5  their services that out-of-network providers have not agreed to accept, and that the
6  Health Plans provide certain incentives to the in-network providers.

7      37.  PLAINTIFFS are informed and believe that the Health Plans also
8  typically provide that outpatient surgical services performed at an ASC are eligible
9  for coverage under the plans.

10      38.  PLAINTIFFS are informed and believe that under each of the ERISA
11  Plans at issue in this litigation that offer in-network and out-of-network coverage,
12  and pursuant to the administrative service agreements between United and the other
13  Defendants, United provides access to its provider network to members of the plans.

14      39.  Some ASCs have written contracts with United, under which they agree
15  to accept reimbursement amounts that are discounted from the ASC's total billed
16  charges, in exchange for the benefits of being an in-network provider (also
17  sometimes called a "contracted" or "participating" provider) for United's network.
18  These benefits typically include an increased volume of business, because the health
19  benefit plans provide financial incentives to their members to utilize the services of
20  in-network providers – such as reduced co-insurance payments, annual deductibles
21  and/or annual out-of-pocket maximums – as well as incentives to the contracted
22  providers.

23      40.  Conversely, some ASCs, including PLAINTIFFS, do not have written
24  contracts to be part of United's network.  They are out-of-network providers (also
25  sometimes called "non-contracted" or "non-participating" providers).  As a result,
26  these ASCs receive a lesser volume of patients from the health benefit plans United
27  administers, but they are not required to accept the discounted in-network amounts
28  for the services rendered to the plan members.

1    41.    Whether the benefits claims are from out-of-network ASCs, such as
2  PLAINTIFFS, or from in-network ASCs, the claims reflect the ASCs' actual billed
3  charge for the claims.  Even though in-network ASCs are typically reimbursed
4  according to the discounted contract rates they negotiated to become part of the
5  network, they still submit their full billed charges on the claim.  This practice is
6  industry standard for all providers, and reflects the well-established fact that charges
7  are not the same as discounted in-network contract rates.  Therefore, United has for
8  many years acquired a wealth of charge data from which it could price
9  PLAINTIFFS' claims through a proper comparison of prevailing charges for similar
10  health care services by similar ASCs within the same geographical market at the
11  time.

12    42.    Each year United processes hundreds of claims submitted by
13  PLAINTIFFS for health care services that PLAINTIFFS provides to members
14  pursuant to the Health Plans and the assignments of benefits under those ERISA
15  Plans that PLAINTIFFS receive from the members.  From 2007 through the present,
16  PLAINTIFFS timely submitted numerous claims for payment to United as a result
17  of services provided by PLAINTIFFS to the members.  To date, Defendants have
18  reimbursed PLAINTIFFS for only a fraction of the amount due to PLAINTIFFS in
19  respect of the claims, despite many appeals and demands submitted to Defendants
20  by or on behalf of PLAINTIFFS.

21    43.    At all relevant times, PLAINTIFFS submitted the appropriate claim
22  forms for payment to United.  The claim forms include information such as the type
23  of procedure, the coding for the procedure, the fact that PLAINTIFFS are an
24  assignee of the member's benefits, and other information by which the claim can be
25  processed and paid.  The claim form also includes PLAINTIFFS' billed charges.
26  These bills are submitted on industry standard forms, commonly known as Uniform
27  Billing ("UB") forms.  The "charge" amount that PLAINTIFFS submits on a
28  reimbursement claim is the same regardless of whether the payor is an out-of-

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

12
COMPLAINT FOR:

1   network payor, an in-network payor, a government payor, or a private payor.  This
2   also is industry standard.

3       44.    PLAINTIFFS' billed charges are competitive with both other out-of-
4   network ASCs and in-network ASCs in the same geographic region in which
5   PLAINTIFFS provides services.

6       45.    In accordance with the assignment of benefits, after processing
7   PLAINTIFFS' claim, either United or the ERISA Plans sends the reimbursement
8   check and an accompanying EOB directly to PLAINTIFFS, thereby affirming the
9   validity of the assignment of benefits and acknowledging PLAINTIFFS' status as
10  the "beneficiary" and "claimant" for benefits.

11      46.    In most instances, as an out-of-network provider of health care
12  services, PLAINTIFFS submitted the claims to United for pricing and payment
13  according to a payment rate that in the industry and in plan documents is commonly
14  referred to as the "Usual, Customary and Reasonable" rate, the "Reasonable and
15  Customary" amount, the "Usual and Customary" amount, the "Reasonable Charge,"
16  the "Prevailing Rate," the "Usual Fee," the "Competitive Fee," or some other
17  similar phrase that, in the context of the healthcare industry, and in the Defendants'
18  own parlance, means essentially the same thing. The industry shorthand for these
19  terms is "UCR."

20      47.    For decades, commercial payors like United have purported to
21  reimburse for out-of-network services according to the UCR rate.  The UCR amount
22  is properly determined based on a review of the prevailing or competitive charges
23  for similar health care services by similar types of providers within the same
24  geographical area at the time.  Reimbursement at the UCR rate has become so-well
25  established and understood that some states, including California, now require
26  certain health benefit plans to reimburse out-of-network services at rates using
27  criteria that parallel the industry-standard for determining UCR.  *See, e.g.,* 28 C.C.R.
28  § 1300.71(a)(3)(B) (referring to prevailing provider rates **charged** in the general

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1146457.1

1   geographic area in which the services were rendered).

2       48.   United, through the plan documents, marketing materials, insurance

3   verification and eligibility materials, EOBs, appeal response letters, and other

4   written and oral statements, represented to PLAINTIFFS, and to their members with

5   out-of-network benefit coverage, that it would pay for out-of-network services in an

6   amount that is the lower of either the provider's actual billed charge or the UCR

7   amount.

8       49.   Indeed, until as recently as 2010, United routinely stated on its website

9   that it would pay out-of-network providers "based on language in the member's

10   health plan that in most cases requires the amount to be the lower of either:

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111 • FAX. (310) 551-8181

11       • the out-of-network provider's actual charge billed to the member, or

12       • 'the reasonable and customary amount,' 'the usual, customary, and
          reasonable amount,' 'the prevailing rate,' or other similar terms that

13          base payment on <u>what other healthcare providers in a geographic area</u>
          <u>charge for their services.</u>" [Emphasis added.]

14

15       50.   PLAINTIFFS are informed and believe that the ERISA Plans at issue

16   in this litigation typically provide that for out-of-network services. The plans will

17   reimburse charges based on amounts charged by other providers for similar services

18   or supplies, *i.e.* the UCR standard.

19       51.   Because the industry standard traditionally has been for reimbursement

20   of out-of-network providers according to the UCR rate, and because United and the

21   other Defendants represented that out-of-network providers, including

22   PLAINTIFFS, would be, and were being, reimbursed at the UCR rate, PLAINTIFFS

23   – and the members who assigned their plan benefits to PLAINTIFFS – reasonably

24   expected PLAINTIFFS' claims to be reimbursed pursuant to a methodology

25   legitimately based on UCR, and reasonably relied upon the representations by

26   United and the other Defendants that PLAINTIFFS' claims would be, and were

27   being, reimbursed based on UCR.

28       52.   The sponsors and administrators of the ERISA Plans, including United

1 and the other Defendants, have fiduciary duties to ensure that out-of-network

2 claims, such as those submitted by PLAINTIFFS, are properly priced and paid

3 according to the UCR standard, as set forth in the plans' governing documents and

4 in United's and the other Defendants' communications with PLAINTIFFS and the

5 members regarding plan benefits.

6      53.    But PLAINTIFFS are informed and believe that United, on behalf of

7 itself and the ERISA Plans – and, through their collusion with United, the other

8 Defendants – has participated in the systematic underpricing and underpayment of

9 PLAINTIFFS' claims, as well as in the systematic obfuscation, misrepresentation

10 and concealment of that misconduct.  In fact, Defendants have, in many cases, paid

11 PLAINTIFFS vastly lower amounts than they paid for similar services to an

12 affiliated out-of-network ASC in the same geographic area at during the same

13 general period of time.  PLAINTIFFS are informed and believe that the reduced

14 payments received by PLAINTIFFS were based on United's flawed and improper

15 methodologies for determining UCR, which failed to take into satisfy the UCR

16 standard.

17                 **United's Improper Pricing Methodologies**

18      54.    PLAINTIFFS are informed and believe that United has systematically

19 failed to properly reimburse PLAINTIFFS' claims according to the UCR standard,

20 and has systematically concealed this failure, including through material

21 misrepresentations, omissions, and misleading statements about its pricing and

22 payment methods.

23      55.    PLAINTIFFS are informed and believe that United uses a variety of

24 methods for pricing PLAINTIFFS' out-of-network claims.  Yet, despite having

25 access to a wealth of ASC charge data, none of these methods price PLAINTIFFS'

26 claims according to the UCR standard.

27      56.    PLAINTIFFS are informed and believe that one of United's improper

28 methods for calculating the out-of-network UCR rate for PLAINTIFFS are to base

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  the UCR rate on contracted rates, or the "highest in-network rate."  PLAINTIFFS
2  are informed and believe that the "highest in-network rate" methodology considers
3  only two factors: the billing code for the procedure, and a fixed, contractually-based
4  discounted rate that in-network ASCs receive for the procedure pursuant to a
5  negotiated discount.  United then apparently multiplies the in-network rate by an
6  arbitrary multiplier to arrive at an "allowed amount."  PLAINTIFFS has not had the
7  opportunity to conduct discovery on whether United in fact uses a multiple of its
8  "highest" contracted rates under this methodology, or as to how United selects the
9  arbitrary multipliers.  In any event, it is arbitrary, capricious and improper to use the
10  discounted rates paid to contracted in-network providers to establish the UCR
11  reimbursement amount for claims submitted by PLAINTIFFS, which is a non-
12  contracted, out-of-network provider.

13       57.    PLAINTIFFS are informed and believe, based on publicly available
14  documents, that beginning in 2005, Payment Accuracy Solutions, a division of
15  Defendant Ingenix, secretly began targeting specific ASCs that were out-of-network
16  with United to whom the "highest in-network rate" methodology would be applied.
17  On information from United, these ASCs were targeted solely because they were out
18  of network and had charges deemed to be too high by United.  Plaintiff is informed
19  and believes that it is among the ASCs that was targeted by Ingenix's efforts.

20       58.    PLAINTIFFS are informed and believe that another improper pricing
21  method sometimes used by United to determine the UCR rate of out-of-network
22  claims is a Medicare-based system that United calls the Maximum Non-Network
23  Reimbursement Program ("MNRP") method.  PLAINTIFFS are informed and
24  believe that MNRP creates a maximum allowable reimbursement for out-of-network
25  services using rates and methodologies established by Medicare, and that the
26  calculation for this methodology is typically the Centers for Medicare and Medicaid
27  Services ("CMS") rates multiplied by a factor such as 1.15, 1.25 or 1.40.  The
28  MNRP is similar to the "highest in-network rate" methodology, in that it is an

1   arbitrary, capricious and improper method for determining UCR for PLAINTIFFS'

2   out-of-network claims.

3       59.    PLAINTIFFS are informed and believe that United also may employ

4   other improper methods for pricing PLAINTIFFS' out-of-network claims that do not

5   appropriately establish UCR. Regardless of method, however, all of PLAINTIFFS'

6   claims were priced in a manner that did not follow the customary, proper and stated

7   criteria for determining UCR.

8       60.    It is arbitrary, capricious and improper for United to use discounted in-

9   network contract rates, Medicare rates, workers' compensation rates, or regulated

10   fee schedules to establish reimbursement rates for PLAINTIFFS' claims for non-

11   contracted out-of-network services. Yet, PLAINTIFFS are informed and believe

12   that this is exactly what United did – and does – when it processed and paid

13   PLAINTIFFS' out-of-network claims using United's "highest in-network rate" and

14   MNRP methods, or when it relies upon the OMFS imposed by the State of

15   California for workers' compensation claims or other regulated fee schedules.

16       61.    PLAINTIFFS are informed and believe that Defendants know that in-

17   network rates are lower than billed charges because obtaining a discount from billed

18   charges is a key purpose for having a provider network. The governing documents

19   of health benefit plans often plainly state that the negotiated fees paid to contracted

20   in-network providers are typically lower than the amounts charged by non-

21   contracted out-of-network providers, and that these rates represent a discount from

22   provider charges. Thus, using in-network rates for claims for out-of-network

23   services fails to take into consideration the necessary factors for determining the

24   UCR amount, and does not compare PLAINTIFFS' actual charges with the usual,

25   customary or competitive charges for the same or similar services in the relevant

26   geographic area.

27       62.  Plaintiff is informed and believes that nothing in the language of the

28   ERISA Plans or the Non-ERISA Plans permits the use of United's flawed

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1    methodologies.  None of the Plans contain language that permits the use of the
2    "highest in-network reimbursement rate" method, for instance, which, on
3    information and belief, was developed in secret and never publicized.  Similarly,
4    none of the Plans at issue permit United to target specific ASCs, such as the
5    Plaintiff, using these methods.  Along the same lines, United's use of these flawed
6    methodologies is neither permitted nor required by United's administrative contracts
7    with the Plans.

8        63.    PLAINTIFFS are informed and believe that, at all relevant times, the
9    ERISA Plans relied on, knew of, and agreed with United's decision to use flawed
10   reimbursement methodologies to systematically underpay PLAINTIFFS' claims for
11   the out-of-network services that PLAINTIFFS provided to the members.

12       64.    PLAINTIFFS  is still in the process of investigating and discovering
13   the methods that United used, and continue to use, for pricing and reimbursing
14   PLAINTIFFS' claims.  It is clear, however, that United has failed to implement an
15   appropriate methodology for establishing the UCR amount.  None of United's
16   methods are based on a review of the prevailing or competitive charges for similar
17   healthcare services by similar providers within the same geographical area at the
18   time.

19   **False and Misleading Representations Of UCR Reimbursement**

20       65.    Members treated by PLAINTIFFS expect their health benefit plans and
21   the administrators of their health benefit plans to accurately and appropriately
22   reimburse the out-of-network services provided by PLAINTIFFS based on UCR.

23       66.    To ensure direct payment from United, PLAINTIFFS routinely obtains
24   an assignment of benefits from the members in advance of providing services to the
25   member.  This assignment expressly authorizes direct payment to PLAINTIFFS for
26   the medical and surgical benefits allowable under the plan, and otherwise payable to
27   the member under the plan, as payment toward the total charges for the services
28   rendered.  Thus, the members assigned their health care benefits under the plan, and

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

18
COMPLAINT FOR:

1  the correlative rights arising from these benefits, to PLAINTIFFS.  This is a

2  standard industry practice among healthcare providers.  Moreover, PLAINTIFFS are

3  informed and believe that the plans typically provide that, for out-of-network

4  benefits, claim reimbursement will be paid directly to the provider if the provider

5  notifies United that an assignment of benefits is on file.  Accordingly, the plans

6  typically require United to honor assignments of benefits from the member to

7  PLAINTIFFS.

8      67.    PLAINTIFFS are informed and believe that Defendants know that

9  United's methodologies do not actually establish a UCR amount, and that, as a

10  consequence, PLAINTIFFS are being systematically underpaid for its services.

11  Nonetheless, rather than disclosing the true methodologies being used to calculate

12  the benefit determinations and reimbursement payments for PLAINTIFFS' claims,

13  the Defendants made representations – to PLAINTIFFS and to their own members –

14  either that United had accurately and appropriately calculated the amount owed to

15  PLAINTIFFS pursuant to the UCR standard, or that the services provided by

16  PLAINTIFFS were not entitled to coverage under the plans.

17      68.    For example, prior to providing the services, PLAINTIFFS first

18  contacted United to verify that the member was an eligible member.  Known as the

19  "verification of benefits," this contact is how PLAINTIFFS determined –  prior to

20  providing the services – whether the member had out-of-network benefits and, if so,

21  what those benefits were.

22      69.    When verifying benefits, PLAINTIFFS' employees would either call

23  the United phone number provided on the members' health insurance cards, and/or

24  query the on-line benefit eligibility verification system maintained by United at

25  UnitedHealthcare Online.  PLAINTIFFS are informed and believe that responding

26  to verification of benefit inquiries is one of the administrative services that United

27  provides with respect to the plans.

28      70.    In response to PLAINTIFFS' inquiry about out-of-network benefits,

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

19

COMPLAINT FOR:

1   United, on behalf of itself and the other Defendants, typically informed

2   PLAINTIFFS that the member had out-of-network benefits at a particular

3   percentage (*e.g.*, 60%, 70%, 80%).  In the industry context and in conformance with

4   industry standard, and in light of the common course of dealing between a provider

5   and payor, the percentage provided is a percentage of UCR or the provider's full

6   billed charges.

7         71.    Moreover, the Explanations of Benefits ("EOBs") that United sent to

8   PLAINTIFFS and the members usually represent that out-of-network benefits are

9   calculated based on the UCR standard.  The EOBs list the billed charge, the amount

10  of the charge being "allowed," the applicable benefit percentage, any applicable

11  deductibles or copayments, the payment amount, and the amount that is the

12  responsibility of the member.  The payment amount is the benefit percentage

13  applied to the "allowed amount," minus any applicable deductibles and copayments.

14  The member is listed as responsible for any difference between the billed charge and

15  the payment amount.  The EOBs are written so that the "allowed amount" appears to

16  be the UCR rate, because the EOBs typically will provide as follows in an

17  explanatory remark on the EOB:

18         Your plan covers **reasonable charges** for therapeutic
          treatment of sickness or injury.  The **reasonable charge** is
19         based on amounts **charged** by other providers for similar
          services or supplies.  [Emphasis added.]
20

21         Thus, United represents that the Health Plan at issue requires reimbursement

22  based on UCR and that the reimbursement amount was calculated based on UCR.

23         72.    However, United's representations that it's reimbursements were based

24  on the UCR standard were false and misleading, and United knew the

25  representations were false and misleading, in multiple ways.  For example, United's

26  "highest in-network rate" and MNRP methodologies do not take into account actual

27  provider charges, nor do they compare PLAINTIFFS' actual charges with charges

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

1146457.1

1  by other ASCs for the same or similar service in the relevant geographic area.

2  Accordingly, by using in-network rates or Medicare rates for PLAINTIFFS' out-of-

3  network claims, United's representations in its EOBs and appeal response letters

4  that the reimbursement amounts paid to PLAINTIFFS were based on amounts

5  charged by other providers for similar services or supplies were false and

6  misleading.

7       73.    United also made similar statements and representations in letters sent

8  to PLAINTIFFS and the members during the course of administrative appeals filed

9  by PLAINTIFFS with United.  These response letters expressly represented that

10 reimbursement was based on the UCR rate, and would typically provide that "[t]he

11 plan covers reasonable charges for therapeutic treatment of sickness or injury.  The

12 reasonable charge is based on amounts charged by other providers for similar

13 services or supplies in your area."  Such statements were designed to conform to the

14 plans' descriptions of UCR reimbursement, to the health care industry's accepted

15 understanding of UCR, and to the representations made by United in the EOBs.

16 They also were designed to conform to United's own representations – such as that

17 on its website – of its out-of-network reimbursement methodology, in which United

18 represented that it bases payment on what other health care providers in a

19 geographic area charge for similar services or supplies.  However, such

20 representations were false and/or misleading, and United knew the representations

21 were false and/or misleading.

22      74.    Further, United sometimes represented in its appeal response letters

23 that it had calculated the UCR rate for PLAINTIFFS' claims using an Ingenix

24 Database, which United purported to consist of accurate prevailing provider charges.

25 In these communications, United represented to PLAINTIFFS and to its own

26 members that it relied on the Ingenix Database to calculate the UCR amount, and/or

27 represented that the Ingenix Database contains trustworthy charge material collected

28 from the largest health insurers in the country and reliable industry sources.  These

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1146457.1

1  representations are false as PLAINTIFFS are informed and believe that United often

2  did not use the Ingenix Database to determine the UCR reimbursement rate for

3  PLAINTIFFS' claims.

4      75.    United made the foregoing representations, and continues to make

5  certain of the foregoing representations, both on its own behalf and on behalf of the

6  other Defendants that contract with United to administer the plans.

7      76.    PLAINTIFFS are informed and believe that, with respect to the claims

8  that United administers for the other Defendants, the other Defendants have at all

9  pertinent times been aware of United's statements to PLAINTIFFS, have authorized

10  United to make such statements pursuant to the authority delegated to United in the

11  administrative services agreements, and have known that United's statements were

12  false and/or misleading.

13      77.    PLAINTIFFS and, on information and belief, the members acted in

14  reliance on the United's representations, and PLAINTIFFS has been harmed by

15  Defendants' failure to properly calculate and pay PLAINTIFFS for the health care

16  services that were provided to the Defendants' members.

17      78.    The representations by United outlined above, on behalf of itself and

18  the other Defendants, routinely failed to disclose the use of the "highest in-network

19  rate" method, the MNRP method, or any other improper method used by United to

20  price PLAINTIFFS' claims, and amounted to misrepresentation and/or concealment

21  of the true methods by which United reimbursed PLAINTIFFS' claims.

22      79.    In fact, in a declaration previously filed in a similar action before this

23  court, a representative of United stated that, as of at least March 2010, the

24  reimbursement amount for most of the claims submitted by PLAINTIFFS "was

25  determined by reference to (1) a multiple of the highest in-network rate for the

26  service, or (2) a program based on a multiple of Medicare rates called the Maximum

27  Non-Network Reimbursement Program ('MNRP')." Yet despite this declaration,

28  United has repeatedly misrepresented in EOBs and appeal response letters for

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   claims submitted by PLAINTIFFS in or after March 2010 that the reimbursement

2   was calculated pursuant to a proper UCR methodology and represented a UCR

3   amount, that the reimbursement amount was calculated according to the Ingenix

4   Database, or that the reimbursement amount was determined by the State of

5   California – or a combination of these misrepresentations.

6

7                           **Example Claims and Misrepresentations**

8        80.     For example, the following examples demonstrate how United

9   repeatedly used misrepresentations, omissions, misleading statements and other

10  efforts to conceal its true methods for pricing PLAINTIFFS' claims:

11       81.     Patient A[2] came to Los Altos Surgery Center for a surgical procedure

12  on July 1, 2011.  Prior to the procedure, Los Altos Surgery Center obtained an

13  assignment of benefits from Patient A, as well as an authorization to appeal United's

14  benefit determination as Patient A's designated representative.  Following its regular

15  business practice, Los Altos Surgery Center contacted United to verify Patient A's

16  eligibility and out-of-network benefits, which, on information and belief, provided

17  for payment of out-of-network benefits for Patient A at 70% of UCR (after any

18  applicable deductibles and up to any annual out-of-pocket maximum).  United

19  verified Patient A's eligibility and benefits.  Thereafter, in reasonable reliance on

20  this eligibility and benefit verification, Los Altos Surgery Center provided its

21  services to Patient A. PLAINTIFFS billed United in a timely manner, and the total

22  charges for PLAINTIFFS' services were $29,976.

23       82.     In the EOB that United sent to PLAINTIFFS dated August 31, 2011,

24  United stated that the "Amount Allowed" was only $6,360, and, after further

25  _____

26  [2] The names of the patients set forth herein as examples have been changed to
    letters, and the dates of service limited to the month of service, to preserve patient
27  confidentiality.  PLAINTIFFS will disclose patient identity information to
    Defendants on an as-needed basis and pursuant to a protective order.

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

1146457.1

applying a patient deductible and the out-of-network benefit level, United paid only $4,102 for the claim. However, the EOB provided a different explanation for the non-covered portion of PLAINTIFFS' claim. The EOB stated merely that the "plan covers reasonable charges," which, according to the EOB, was "based on amounts charged by other providers for similar services or supplies," and that "payment of benefits has been made in accordance with the terms of the managed care system."

83.   Thus, United represented that the plan requires reimbursement based on UCR and that the reimbursement amount for Patient A was calculated based on UCR, when in fact United knew that the reimbursement was calculated using a methodology that does not reflect UCR. PLAINTIFFS are informed and believe that United this claim based on the "highest in-network rate" methodology, which does not constitute UCR. Consequently, United's statement in its EOB was false and/or misleading, and United deprived PLAINTIFFS of the knowledge with which PLAINTIFFS could reasonably and/or effectively challenge the flawed methodology that United used to reimburse PLAINTIFFS' claim.

84.   Los Altos Surgery Center timely appealed the claim reimbursement. On November 18, 2011, United responded in a letter to PLAINTIFFS stating: "Based on our review, according to your Benefit Plan, this request for payment was processed correctly." The appeal response letter then went on to make the following false representations:

As you requested, here is our explanation of our process for determining reasonable and customary (R&C) charges. Our process is based upon data we license through Ingenix, a subsidiary of UnitedHealth Group. Your benefit plan defines "reasonable and customary charge" as:

An amount measured and determined by Ingenix, by comparing the actual fee for the service or supply with the prevailing charges made for it. It takes into account all pertinent factors including:

•   The complexity of the service

•   The range of service provided

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1146457.1

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

•   The most frequent charge level in the provider's location and in other areas having similar medical experience

We derive reasonable and customary charges from a database of provider-billed charges for professional healthcare services. Ingenix maintains the database. Provider data is collected from major healthcare payer organizations, by zip code areas in all 50 states. This data is updated every six months. The database we use contains more than 9 million records.

85.     These representations were false in that United did not use the Ingenix database to price this claim. United used an in-network amount for pricing the claim. The claim was not based on the complexity of the service, the range of services provided, or the most frequent charge level in the provider's location and in other areas having similar medical experience.

86.     Patient B came to Los Altos Surgery Center for a surgical procedure on May 20, 2011. Prior to the procedure, Los Altos Surgery Center obtained an assignment of benefits from Patient B, as well as an authorization to appeal United's benefit determination as Patient B's designated representative. Following its regular business practice, Los Altos Surgery Center contacted United to verify Patient A's eligibility and out-of-network benefits, which, on information and belief, provided for payment of out-of-network benefits for Patient B at 70% of UCR (after any applicable deductibles and up to any annual out-of-pocket maximum). United verified Patient B's eligibility and benefits. Thereafter, in reasonable reliance on this eligibility and benefit verification, Los Altos Surgery Center provided its services to Patient B. PLAINTIFFS billed United in a timely manner, and the total charges for PLAINTIFFS' services were $68,260.

87.     In the EOB that United sent to PLAINTIFFS dated July 13, 2011, United stated that the "Amount Allowed" was only $6,360, and, after further applying a patient deductible and the out-of-network benefit level, United paid only $3,752 for the claim. However, the EOB provided a different explanation for the non-covered portion of PLAINTIFFS' claim. The EOB stated merely that the "plan

COMPLAINT FOR:

1146457.1

covers reasonable charges," which, according to the EOB, was "based on amounts charged by other providers for similar services or supplies," and that "payment of benefits has been made in accordance with the terms of the managed care system."

88.    Thus, United represented that the plan requires reimbursement based on UCR and that the reimbursement amount for Patient B was calculated based on UCR, when in fact United knew that the reimbursement was calculated using a methodology that does not reflect UCR.  PLAINTIFFS are informed and believe that United this claim based on the "highest in-network rate" methodology, which does not constitute UCR.  Consequently, United's statement in its EOB was false and/or misleading, and United deprived PLAINTIFFS of the knowledge with which PLAINTIFFS could reasonably and/or effectively challenge the flawed methodology that United used to reimburse PLAINTIFFS' claim.

89.    Los Altos Surgery Center timely appealed the claim reimbursement. On September 23, 2011, United responded in a letter to PLAINTIFFS stating: "Based on our review, according to your Benefit Plan, this request for payment was processed correctly."  The appeal response letter then went on to make the following false representations about using the Ingenix database to price the claim.  These representations were false in that United did not use the Ingenix database to price this claim.  United used an in-network amount for pricing the claim.  The claim was not based on the complexity of the service, the range of services provided, or the most frequent charge level in the provider's location and in other areas having similar medical experience.

90.    Patient C came to Los Altos Surgery Center for a surgical procedure on July 8, 2011.  Prior to the procedure, Los Altos Surgery Center obtained an assignment of benefits from Patient B, as well as an authorization to appeal United's benefit determination as Patient B's designated representative.  Following its regular business practice, Los Altos Surgery Center contacted United to verify Patient A's eligibility and out-of-network benefits, which, on information and belief, provided

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1146457.1

1   for payment of out-of-network benefits for Patient B at 70% of UCR (after any

2   applicable deductibles and up to any annual out-of-pocket maximum).   United

3   verified Patient C's eligibility and benefits.   Thereafter, in reasonable reliance on

4   this eligibility and benefit verification, Los Altos Surgery Center provided its

5   services to Patient C. PLAINTIFFS billed United in a timely manner, and the total

6   charges for PLAINTIFFS' services were $28,148.

7       91.   In the EOB that United sent to PLAINTIFFS dated August 10, 2011,

8   United stated that the "Amount Allowed" was only $6,360, and, after further

9   applying a patient deductible and the out-of-network benefit level, United paid only

10  $3,966.67 for the claim.   However, the EOB provided a different explanation for the

11  non-covered portion of PLAINTIFFS' claim.   The EOB stated merely that the "plan

12  covers reasonable charges," which, according to the EOB, was "based on amounts

13  charged by other providers for similar services or supplies," and that "payment of

14  benefits has been made in accordance with the terms of the managed care system."

15      92.   Thus, United represented that the plan requires reimbursement based on

16  UCR and that the reimbursement amount for Patient B was calculated based on

17  UCR, when in fact United knew that the reimbursement was calculated using a

18  methodology that does not reflect UCR.   PLAINTIFFS are informed and believe

19  that United this claim based on the "highest in-network rate" methodology, which

20  does not constitute UCR.   Consequently, United's statement in its EOB was false

21  and/or misleading, and United deprived PLAINTIFFS of the knowledge with which

22  PLAINTIFFS could reasonably and/or effectively challenge the flawed

23  methodology that United used to reimburse PLAINTIFFS' claim.

24      93.   Los Altos Surgery Center timely appealed the claim reimbursement. On

25  October 19, 2011, United responded in a letter to PLAINTIFFS stating: "Based on

26  our review, according to your Benefit Plan, this request for payment was processed

27  correctly."   The appeal response letter then went on to make the following false

28  representations about using the Ingenix database to price the claim.   These

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111 • FAX. (310) 551-8181

27

1  representations were false in that United did not use the Ingenix database to price
2  this claim.  United used an in-network amount for pricing the claim.  The claim was
3  not based on the complexity of the service, the range of services provided, or the
4  most frequent charge level in the provider's location and in other areas having
5  similar medical experience.

6      94.    Patient D came to Los Altos Surgery Center for a surgical procedure on
7  December 2, 2011.  Prior to the procedure, Los Altos Surgery Center obtained an
8  assignment of benefits from Patient B, as well as an authorization to appeal United's
9  benefit determination as Patient B's designated representative.  Following its regular
10 business practice, Los Altos Surgery Center contacted United to verify Patient A's
11 eligibility and out-of-network benefits, which, on information and belief, provided
12 for payment of out-of-network benefits for Patient B at 70% of UCR (after any
13 applicable deductibles and up to any annual out-of-pocket maximum).  United
14 verified Patient D's eligibility and benefits.  Thereafter, in reasonable reliance on
15 this eligibility and benefit verification, Los Altos Surgery Center provided its
16 services to Patient D. PLAINTIFFS billed United in a timely manner, and the total
17 charges for PLAINTIFFS' services were $15,835.67.

18     95.    In the EOB that United sent to PLAINTIFFS dated January 11, 2012,
19 United stated that the "Amount Allowed" was only $5,667.67, and, after further
20 applying a patient deductible and the out-of-network benefit level, United paid only
21 $3,956.67 for the claim.  However, the EOB provided a different explanation for the
22 non-covered portion of PLAINTIFFS' claim.  The EOB stated merely that the "plan
23 covers reasonable charges," which, according to the EOB, was "based on amounts
24 charged by other providers for similar services or supplies," and that "payment of
25 benefits has been made in accordance with the terms of the managed care system."

26     96.    Thus, United represented that the plan requires reimbursement based on
27 UCR and that the reimbursement amount for Patient D was calculated based on
28 UCR, when in fact United knew that the reimbursement was calculated using a

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1146457.1

1 methodology that does not reflect UCR.  PLAINTIFFS are informed and believe

2 that United this claim based on the "highest in-network rate" methodology, which

3 does not constitute UCR.  Consequently, United's statement in its EOB was false

4 and/or misleading, and United deprived PLAINTIFFS of the knowledge with which

5 PLAINTIFFS could reasonably and/or effectively challenge the flawed

6 methodology that United used to reimburse PLAINTIFFS' claim.

7       97.    Los Altos Surgery Center timely appealed the claim reimbursement. On

8 March 16, 2012, United responded in a letter to PLAINTIFFS stating: "Based on our

9 review, according to your Benefit Plan, this request for payment was processed

10 correctly."  The appeal response letter then went on to make the following false

11 representations about using the Ingenix database to price the claim.  These

12 representations were false in that United did not use the Ingenix database to price

13 this claim.  United used an in-network amount for pricing the claim.  The claim was

14 not based on the complexity of the service, the range of services provided, or the

15 most frequent charge level in the provider's location and in other areas having

16 similar medical experience.

17       98.    In summary, Defendants' representations that PLAINTIFFS' claims

18 were reimbursed based on UCR rates were false and/or misleading.  From the time

19 of verification of benefits through the time that PLAINTIFFS' appeals were denied,

20 the Defendants routinely and systematically misrepresented that out-of-network

21 benefits are reimbursed according to the UCR standard, and misrepresented or

22 concealed the true reimbursement methods.

23

24 **Defendants' Practices Unfairly Shift the Burden of Payment to the Patients**

25       99.    PLAINTIFFS are informed and believe that the members of the Plans

26 typically pay higher premiums to have the option to obtain the services of out-of-

27 network providers than they would pay if their options were limited to in-network

28 providers (except in emergency circumstances and other limited exceptions).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

COMPLAINT FOR:

1146457.1

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

100.   Defendants' failure to appropriately and fairly compensate PLAINTIFFS for its out-of-network claims has not only injured PLAINTIFFS, it has also injured the members – *i.e.*, the patients who have obtained, and want to obtain, services from PLAINTIFFS – by exposing them to significant liability.  In underpricing PLAINTIFFS' claims, Defendants have represented, in EOBs and other documents, that the members are liable to PLAINTIFFS for amounts that should have been covered – *i.e.*, the amount of the claim not paid but that Defendants should have paid if they used an appropriate methodology to calculate UCR.  By systematically underpricing PLAINTIFFS' claims, United and the other Defendants are illegally transferring liability to the members for amounts that should be covered by Defendants if the claims were priced and paid according to the UCR standard and a proper UCR methodology.

101.   Moreover, the members are further injured because the plans regularly call for the members to meet certain specified annual out-of-pocket expenditure thresholds – typically called an annual deductible and an annual out-of-pocket maximum – in order to receive benefits or increased benefit levels under the plans.  However, any amounts that the members must pay to out-of-network providers because those amounts are above the allowable UCR amounts as determined by United typically do not count toward these threshold expenditures.  Thus, by underpricing PLAINTIFFS' claims using inappropriate UCR methods, the Defendants effectively force the members to pay far larger out-of-pocket costs than the members' plans require.  The result is underpayment of PLAINTIFFS' claims by Defendants, greater liability for the members with respect to PLAINTIFFS' claims, and potential greater liability for the members with respect to future claims by PLAINTIFFS or another provider whose services the member engages.  The combined effect is a gross distortion of the out-of-network benefit provisions set forth in the plans, and the practical evisceration of the freedom to choose out-of-network providers that the plans promise to their members – rights for which

COMPLAINT FOR:

1  members pay increased premiums.

2

3  ### The Harm Caused To PLAINTIFFS

4  102.   PLAINTIFFS are informed and believe that, and thereon alleges, that

5  all of its claims which were underpaid involve health benefit plans in which out-of-

6  network benefits for ASCs are intended to be paid in accordance with the UCR

7  standard.  It is an abuse of their discretion and fiduciary duties for Defendants to

8  calculate out-of-network benefits according to in-network rates, Medicare rates,

9  OMFS rates, the flawed Ingenix Database, or some other methodology which does

10  not adequately compare PLAINTIFFS' charges with charges of similarly-situated

11  providers in the same geographic area at the time.

12  103.   By using flawed and inappropriate methodologies to price and pay

13  PLAINTIFFS' out-of-network, the Defendants have systematically and drastically

14  underpriced and underpaid PLAINTIFFS for its services.  The current amount owed

15  by United to PLAINTIFFS is approximately 43,912,514.29, plus interest.

16  104.   Moreover, United intentionally led PLAINTIFFS to believe that

17  benefits were reimbursed in accordance with the UCR standard.  As alleged above,

18  when PLAINTIFFS contacted United to verify out-of-network benefits, United

19  routinely led PLAINTIFFS to believe that benefits were available at a UCR rate.

20  Yet the Defendants rarely paid PLAINTIFFS' claims at the represented percentage

21  of UCR, and instead improperly reimbursed PLAINTIFFS' claims based on one or

22  more arbitrary, capricious, and improper methodologies such as those set forth

23  above.

24  105.   Furthermore, the EOBs, appeal response letters, and other

25  communications from United represented that benefits were in fact determined

26  based on the UCR rate.  At no point did United adequately disclose its true pricing

27  methodologies, which do not satisfy the UCR standard.

28  106.   As a result of Defendants' misrepresentations, omissions, and

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

1146457.1

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1   misleading statements, and their concealment of the true manner in which they

2   reimbursed PLAINTIFFS' out-of-network claims, PLAINTIFFS was induced into

3   agreeing to incur significant expenses in order to provide its services to Defendants'

4   members.

5        107.   PLAINTIFFS suffers direct harm by incurring expenses to provide the

6   services, and then is forced into the position of incurring further expenses seeking

7   corrected reimbursements from Defendants and having to attempt to collect amounts

8   from members that the members justifiably believe should be covered by their

9   health benefit plans.  PLAINTIFFS are informed and believe that the members also

10  reasonably expected that their health benefit plans, which purport to give them the

11  freedom to choose out-of-network providers, would properly calculate and pay out-

12  of-network benefits according to UCR.  PLAINTIFFS often is unable to collect

13  balances from the members, thereby having to take a loss for its services.

14  PLAINTIFFS also suffers a loss on the costs of supplies, space, equipment, etc., that

15  PLAINTIFFS expends to provide the services to Defendants' members.

16       108.   By falsely representing that the members are liable for amounts that the

17  members in fact do not owe under the terms of their health benefit plans, and by

18  forcing PLAINTIFFS to pursue improper amounts from the members, Defendants'

19  illegal and improper actions also have harmed the relationships that PLAINTIFFS

20  has with its patients, making it difficult for PLAINTIFFS to continue to operate its

21  business.

22       109.   PLAINTIFFS are informed and believe that through the wrongful

23  conduct set forth above, Defendants intentionally seek to ruin PLAINTIFFS' ability

24  to compete outside United's "network," and seek to force PLAINTIFFS into

25  accepting low in-network rates and/or agreeing to oppressive contract terms.

26       110.   As a further result of the Defendants' wrongful business practices,

27  PLAINTIFFS are  harmed by having to expend significant time and resources in

28  trying to appeal Defendants' underpayments.

111.   PLAINTIFFS are informed and believe that the Health Plans typically require a benefit determination and claim appeal process that provides a full, meaningful, and independent review, and that affords plan beneficiaries and claimants broad rights to accurate, timely and substantive information regarding the reasons, rules, methodologies, terms, provisions and interpretations that underlie the benefit determinations.  The Defendants' false and/or misleading statements, acts of concealment and failures to disclose were knowing and intentional, and had the design and effect of preventing a full and meaningful evaluation and review of the grounds for initial benefit determinations and benefit determinations on review. Defendants' failure to provide a full and fair review of PLAINTIFFS' claims and appeals rarely results in any additional payment.  The appeals are therefore rendered futile due to the Defendants' systematic misrepresentations, omissions and misleading statements intended to conceal the true methods that United uses to price PLAINTIFFS' claims.

112.   As fiduciaries and administrators of Health Plans, the Defendants occupied and continue to occupy a position of trust, by which they must accurately represent the terms and conditions of the plans, must disclose all material facts concerning how plan benefits are priced and determined, and must act in the interest of the plan and the plan's beneficiaries.  Nonetheless, the Defendants either knew or recklessly disregarded the fact that the misrepresentations, omissions, misleading statements and concealments described above were material, and that PLAINTIFFS, as well as the Defendants' members, would and did detrimentally rely on such misrepresentations, omissions, misleading statements and concealments when deciding to provide services, and during the claims adjudication and appeal process.

113.   PLAINTIFFS' business and property has been injured as a proximate result of the Defendants' conduct,  in that PLAINTIFFS provided services to members as a result of the Defendants' misrepresentations, omissions and concealments about out-of-network benefits, and PLAINTIFFS has been underpaid

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

COMPLAINT FOR:

1   approximately 43,912,514.29, plus interest, for the services rendered to members in

2   justifiable reliance on the communications they received from the Defendants

3   concerning pricing and payment of out-of-network benefits.

4         114.   Not only were PLAINTIFFS and the members injured by Defendants'

5   conduct, but Defendants benefited by reducing the amounts payable for out-of-

6   network, and retaining the differential between the proper UCR-based

7   reimbursement of PLAINTIFFS' claims and the amount actually paid by Defendants

8   in respect of those claims.

9

10   **FIRST CLAIM FOR RELIEF**

11   **Enforcement Under 29 U.S.C. § 1132(a)(1)(B)**
**For Failure To Pay ERISA Plan Benefits**

12   **(Against All Defendants)**

13         115.   The allegations of the prior paragraphs of this Complaint are hereby

14   repeated as if fully set forth herein.

15         116.   This cause of action is alleged by PLAINTIFFS for relief in connection

16   with claims for treatment rendered to members of a ERISA Plans.  This cause of

17   action seeks to recover benefits, enforce rights and clarify rights to benefits under 29

18   U.S.C. § 1132(a)(1)(B).  PLAINTIFFS has standing to pursue these claims as

19   assignee of the members' benefits under the ERISA Plans.  As the assignee of

20   benefits under the ERISA Plans, PLAINTIFFS are a "beneficiary" entitled to collect

21   benefits under the terms of the ERISA Plans, and is the "claimant" for purposes of

22   the ERISA statute and regulations.

23         117.   ERISA authorizes actions under 29 U.S.C. § 1132(a)(1)(B) to be

24   brought against the ERISA Plans as entities, against the ERISA Plans'

25   administrators, and against other appropriate entities.  PLAINTIFFS are informed

26   and believe that each of the ERISA Plan Defendants identified as an "ERISA plan"

27   earlier in this Third Amended Complaint are all ERISA Plans.  Therefore, these

28   entities are proper defendants for this claim.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

1146457.1

1      118.   PLAINTIFFS are informed and believe that, with respect to each of the

2  ERISA Plans at issue in this, but which do not specifically designate a plan

3  administrator, each of the United Defendants effectively controls the decision

4  whether to honor or to deny a claim under the plan, exercises authority over the

5  resolution of benefit claims, and/or has responsibility to pay the claims.  Therefore,

6  each of the United Defendants is a proper defendant for this claim. The United

7  Defendants also play a role as the *de facto* plan administrator for such plans. The

8  United Defendants functioned and/or continue to function as plan administrators

9  insofar as they have, among other things, provided plan documents to participants,

10  received benefit claims, evaluated and processed those claims, reviewed and

11  interpreted the terms of the plan, made initial benefit determinations, made and

12  administered benefit payments, handled appeals of benefit determinations, and

13  served as the primary point of contact for members and providers to communicate

14  regarding benefits and benefit determinations.

15      119.   PLAINTIFFS are informed and believe that, with respect to each of the

16  ERISA Plans at issue in this case that are Self-Insured Plans, and which designate

17  one of the ERISA Plan Defendants as the plan administrator, each of the United

18  Defendants effectively controls the decision whether to honor or to deny a claim

19  under the plan, exercises authority over the resolution of benefit claims, and/or has

20  responsibility to pay the claims, and has functioned as a co-plan administrator.  The

21  United Defendants functioned and/or continue to function as plan administrators

22  insofar as they have, among other things, provided plan documents to participants,

23  received benefit claims, evaluated and processed those claims, reviewed and

24  interpreted the terms of the plan, made initial benefit determinations, made and

25  administered benefit payments, handled appeals of benefit determinations, and

26  served as the primary point of contact for members and providers to communicate

27  regarding benefits and benefit determinations.

28      120.   At all relevant times, PLAINTIFFS was entitled to reimbursement

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

COMPLAINT FOR:

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1   under the ERISA Plans in accordance with the UCR standard on each of the claims

2   at issue in this litigation.  The United Defendants and the ERISA Plan Defendants

3   breached the ERISA Plans' benefits provisions by underpricing and underpaying

4   PLAINTIFFS for the out-of-network services provided by PLAINTIFFS to the

5   members and covered under the ERISA Plans, and due to PLAINTIFFS as the

6   assignee of the members' out-of-network benefits.  As set forth more fully above,

7   the breaches included failing to pay out-of-network benefits under the plan pursuant

8   to the UCR standard. The breaches also included, among other things, interpreting

9   and implementing the ERISA Plan terms in a way that systematically was arbitrary

10  and capricious, making material misrepresentations regarding the manner in which

11  out-of-network benefits are priced, making false representations that PLAINTIFFS'

12  out-of-network claims were paid based upon a comparison of PLAINTIFFS' charges

13  with amounts charged by similar providers for similar services or supplies, using

14  improper methodologies to miscalculate the UCR rate, systematically reducing

15  benefits paid to PLAINTIFFS for its out-of-network services, and failing to provide

16  a benefit determination and appeal process that provides for a full and meaningful

17  review of benefit claims and determinations.

18      121.  PLAINTIFFS are deemed to have exhausted all administrative

19  remedies available to it because the United Defendants and the ERISA Plan

20  Defendants failed to establish and follow reasonable claims procedures or a full and

21  meaningful review and appeal process, as required by ERISA.  The United

22  Defendants and the ERISA Plans have routinely failed to process claims submitted

23  by PLAINTIFFS in a manner consistent or substantially in compliance with ERISA

24  regulations. *See* 29 C.F.R. § 2560.503-1.  Among other things, the United

25  Defendants and the ERISA Plans:

26      (a)   failed to notify PLAINTIFFS of benefit determinations and
            review determinations within the required amount of time after
27            receipt of the claim or appeal;

28      (b)   failed to provide the specific reason or reasons for their benefit

determinations or review determinations, including information concerning the flawed and inappropriate methods used for pricing PLAINTIFFS' out-of-network claims, and frequently provided inconsistent and conflicting explanations for the same benefit determinations;

(c) failed to make reference to the specific plan provisions on which their benefit determinations or review determinations were based;

(d) made materially false and misleading statements concerning their methods for determining reimbursement amounts, and refused to disclose the true internal rules, guidelines, protocols and criteria that were relied upon in making the benefit and review determinations;

(e) failed to provide PLAINTIFFS with a sufficient description of the ERISA Plans' review procedures;

(f) failed to provide review of appeals that did not afford deference to the initial benefit determination, and which was conducted by an appropriate named fiduciary of the plan who is independent of the person who made the initial benefit determination;

(g) denied PLAINTIFFS the right to appeal benefit determinations and/or employed policies designed to unduly obstruct, hamper, and delay the appeal of claims submitted by PLAINTIFFS, including, but not limited to, systematic reliance on inappropriate data, refusal to acknowledge provider appeals as appeals, requiring more than two levels of appeal, and characterizing required levels of appeal as discretionary or voluntary; and

(h) denied PLAINTIFFS' efforts to become sufficiently acquainted with the terms of the ERISA Plans, as well as the true methods used to reimburse PLAINTIFFS' claims, thereby rendering the administrative appeal a futile and meaningless endeavor.

122. PLAINTIFFS also exhausted any administrative remedies available to it by pursuing administrative relief before filing suit. PLAINTIFFS' employees repeatedly sent appeal letters to United challenging the benefit determinations and the amounts reimbursed to PLAINTIFFS, and made numerous phone calls to United with respect to its claims.

123. Exhaustion also would have been futile. In light of the United's long-standing, repeated and systematic refusal to provide anything more than a cursory and false and/or misleading explanation concerning its true methods for calculating reimbursement of PLAINTIFFS' claims, given United's ongoing and continued use

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111 • FAX: (310) 551-8181

1146457.1

1  of flawed and inappropriate methodologies to underpay claims in a manner that fails

2  to comply with the terms of the ERISA Plans and its own representations, and

3  considering United's repeated and systematic efforts to misrepresent and conceal its

4  methodologies and the fact that it did not reimburse PLAINTIFFS' claims in

5  accordance with the UCR standard, further exhaustion of the inadequate

6  administrative remedies also would have been futile and meaningless.

7       124.   By reason of the foregoing, PLAINTIFFS are entitled to past due

8  benefits, future benefits, declaratory relief, prejudgment interest, and attorneys' fees.

9  The Court should specifically declare that PLAINTIFFS are entitled to have the

10  United Defendants and the ERISA Plan Defendants:

11      (a)   compile a valid database of charges by PLAINTIFFS and other

12  similar providers in the same geographic area (the distance that could reasonably be considered appropriate for a member to travel in the same area);

13      (b)   calculate PLAINTIFFS' past and future benefits pursuant to a

14  valid database that takes into account valid data and, in accordance with the UCR standard, the rates charged by

15  PLAINTIFFS and other similar providers for similar services in the same geographic area at the time;

16      (c)   determine the UCR rate for PLAINTIFFS' out-of-network

17  services without reference to discounted contract rates applicable to in-network providers;

18      (d)   determine the UCR rate for PLAINTIFFS' out-of-network

19  services without reference to Medicare rates or schedules;

20      (e)   determine the UCR rate for PLAINTIFFS' out-of-network

21  services without reference to the California OMFS fee schedule, other rates used for workers' compensation claims, or any other state-imposed fee schedule;

22
23      (f)   pay the correct UCR amounts to PLAINTIFFS for past benefit claims that were underpaid;

24      (g)   pay future PLAINTIFFS benefit claims using an appropriate

25  methodology for determining UCR rates;

26      (h)   issue new EOBs for past benefit claims, and correct EOBs for future benefit claims, that are in compliance with applicable regulatory notice standards;

27
28      (i)   implement benefit claims and appeal processes that provide a full, meaningful and independent review of benefit

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

COMPLAINT FOR:

1146457.1

1   determinations, and that are consistent and substantially in
2   compliance with ERISA regulations and the terms of the Health
    Plans; and

3   (j)   cease and desist from employing policies and procedures
4         designed to deny or to unduly obstruct, hamper, and delay
          PLAINTIFFS' right to appeal the benefit determinations as to its
5         submitted claims.

6
7   **SECOND CLAIM FOR RELIEF**

8   **Violation of 18 U.S.C. § 1962(c) Based On Predicate Acts Of Mail And Wire**
    **Fraud**
    **(Against All United Defendants)**

9
10   125.   The allegations of the prior paragraphs of this Third Amended

Complaint are hereby repeated as if fully set forth herein.

11   **The Enterprise**

12
13   126.   The United Defendants carried out their scheme to defraud Plaintiff and

14   through the conduct of an association-in-fact enterprise within the meaning of 18

15   U.S.C. § 1961(4).  This association-in-fact enterprise is comprised of the United

16   Defendants, the ERISA Plans, and the DOE defendants (the "Enterprise").

17   127.   The Enterprise has and continues to have an ascertainable structure and

18   function separate and apart from the pattern of racketeering activity in which the

19   United Defendants have engaged.  The members of the Enterprise function as a

20   structured and continuous unit, and performed roles consistent with this structure,

21   including legitimate business activities.  United, the ERISA Plans, and the DOE

22   defendants comprise "a group of persons associated together for a common purpose

23   of engaging in a course of conduct." *Odom v. Microsoft Corporation*, 486 F. 3d 514,

24   552-553 (9th Cir. 2007).  They are associated together for the purpose of processing

25   and paying claims by healthcare providers for services provided to patients who are

26   members of ERISA plans insured and/or administered by United.

27   128.   **Common Purpose.**  The purpose, function and course of conduct of

28   the Enterprise is for United to leverage its ostensible role as the administrator for the

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

39
COMPLAINT FOR:

1   ERISA Plans, and DOES to develop and apply flawed methodologies instead of

2   actually applying or calculating UCR.  In this way, the Defendants undervalued and

3   underpaid claims by out-of-network ASCs, all while hiding behind the mask of a

4   supposedly robust UCR methodology when none existed.  The whole purported

5   system was just smoke and mirrors when applied to UCR-based plans paying for

6   ASCs' out-of-network services.  As alleged above, the ERISA Plans, and DOES

7   have hired United and/or entered into "administrative service agreements" with

8   United to perform certain claims administrative responsibilities, such as providing

9   plan members with plan documents, interpreting and applying the plan terms,

10  making coverage and benefits decisions, handling telephone inquiries from

11  providers concerning the benefits of patients, pricing UCR payments for out-of-

12  network healthcare providers in various geographic regions of the country,

13  calculating reimbursement on claims from providers, determining what information

14  to put on EOBs, and in many cases sending such documents through the United

15  States mail to providers and to patients, handling appeals of coverage and benefits

16  decisions, and sending appeal response communications through the United States

17  mail.

18          129.   United, under the guise of these legitimate administrative

19  responsibilities, applied the flawed methodologies in order to underpay claims

20  submitted by Plaintiff.  United's actions in using these methodologies, rather than

21  true and accurate UCR methodologies, were wholly beyond the scope of any

22  legitimate administrative duties for the Plans at issue.  United set up a classic shell

23  game, offering purported "administrative" services to its clients to save them

24  money, and then lying to Plaintiff and to members by purporting that the lower rates

25  paid reflected a robust UCR-based method.  United was the corporate equal to the

26  neighborhood thug that offers "protection" to local stores on the block against

27  allegedly high priced outside vendors.  Here, the "protection" was a supposedly

28  robust UCR-based system.  In reality, United just picked other methods, and

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1146457.1

1  ERISA Plans, and DOES to develop and apply flawed methodologies instead of

2  actually applying or calculating UCR.  In this way, the Defendants undervalued and

3  underpaid claims by out-of-network ASCs, all while hiding behind the mask of a

4  supposedly robust UCR methodology when none existed.  The whole purported

5  system was just smoke and mirrors when applied to UCR-based plans paying for

6  ASCs' out-of-network services.  As alleged above, the ERISA Plans, and DOES

7  have hired United and/or entered into "administrative service agreements" with

8  United to perform certain claims administrative responsibilities, such as providing

9  plan members with plan documents, interpreting and applying the plan terms,

10 making coverage and benefits decisions, handling telephone inquiries from

11 providers concerning the benefits of patients, pricing UCR payments for out-of-

12 network healthcare providers in various geographic regions of the country,

13 calculating reimbursement on claims from providers, determining what information

14 to put on EOBs, and in many cases sending such documents through the United

15 States mail to providers and to patients, handling appeals of coverage and benefits

16 decisions, and sending appeal response communications through the United States

17 mail.

18        129.   United, under the guise of these legitimate administrative

19 responsibilities, applied the flawed methodologies in order to underpay claims

20 submitted by Plaintiff.  United's actions in using these methodologies, rather than

21 true and accurate UCR methodologies, were wholly beyond the scope of any

22 legitimate administrative duties for the Plans at issue.  United set up a classic shell

23 game, offering purported "administrative" services to its clients to save them

24 money, and then lying to Plaintiff and to members by purporting that the lower rates

25 paid reflected a robust UCR-based method.  United was the corporate equal to the

26 neighborhood thug that offers "protection" to local stores on the block against

27 allegedly high priced outside vendors.  Here, the "protection" was a supposedly

28 robust UCR-based system.  In reality, United just picked other methods, and

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111 • FAX: (310) 551-8181

1146457.1

1  occasionally presented "scrubbed" data that did not reflect UCR charges at all.

2      130.   This common purpose and course of conduct of the Enterprise had at

3  least two desired effects: first, to permit Defendants to gain financially, and second,

4  to force ASCs such as PLAINTIFFS to accept unreasonably low contracted rates.

5  The United Defendants furthered the common purpose by sending EOBs and letters

6  to ASCs and their patients through the mail which falsely stated that: (a) the United

7  Defendants had accurately and appropriately calculated a UCR rate (by comparing

8  Plaintiff's charges with the charges of other ASCs in the same geographic area),

9  when they had not; (b) representing to Plaintiff and patients of Plaintiff that the

10  patients owed certain amounts to the ASCs, when in fact such amounts should have

11  been paid by Defendants; and (c) United had used the Ingenix Database to price

12  claims, when it had not.

13      131.   **Ongoing Organization.**  The Enterprise in this action is an ongoing

14  organization, and is a vehicle for the commission of two or more predicate acts of

15  mail and wire fraud.  Through use of Ingenix's faulty claims administration systems

16  to reimburse out-of-network ASC claims, United established mechanisms for

17  systematically underpaying out-of-network ASC claims by consistently

18  undervaluing the UCR rate for such claims and then falsely representing to both

19  Plaintiff and the members that the reimbursed amount represents the correct

20  reimbursement under the member's healthcare benefits plan.  The ERISA Plans and

21  DOES agreed, through their contracts with United, to use United's flawed systems

22  to undervalue claims and thereby save each of the Defendants large sums of money

23  in the aggregate over thousands of claims.

24      132.   **Continuing Unit.**  The United Defendants' illegal predicate acts in this

25  case demonstrate that the Enterprise functioned as a continuing unit, and that these

26  acts were and are ongoing, and are not isolated.  The ERISA Plans and DOES

27  continue to delegate responsibilities to United to interpret the plan documents, to

28  price and pay providers' claims, and to send false EOBs and letters to Plaintiff and

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111  •  FAX. (310) 551-8181

41

1146457.1

1  the members, and United continues to fraudulently assert that it has accurately and

2  appropriately priced the out-of-network claims, continues to misinterpret the terms

3  of the health plans, continues to incorrectly price and pay the claims, and continues

4  to fraudulently represent that the members owe amounts to Plaintiff which are

5  inappropriate under the terms of the health plans, but which amounts are instead

6  owed under the health plans.

7        133.   The United Defendants directed, conducted and participated in the

8  affairs of the Enterprise.  Under the pretext of providing legitimate plan

9  administration services to the ERISA Plans, the United Defendants not only

10 developed various improper UCR methodologies, but singled out PLAINTIFFS

11 (among other ASCs) to which these methodologies would be applied.  Neither the

12 use of these methodologies nor their discriminatory application to Plaintiff or others

13 were permitted by the language of any ERISA or non-ERISA plan, or called for

14 under any administrative agreement between United and any ERISA or non-ERISA

15 plan.

16       134.   The Enterprise provided each of the United Defendants with a system

17 or vehicle by which they could obtain flawed data and methodologies for

18 underpaying out-of-network ASC claims, use databases and fee schedules to

19 manipulate and reduce payments to Plaintiff and other ASCs for out-of-network

20 services, and make false representations to Plaintiff and other ASCs concerning the

21 reimbursement rates for the services they provided.  Ingenix benefited specifically

22 by enhancing its ability to earn licensing fees through its flawed reimbursement

23 methodologies, and indirectly through the underpayments and higher administrative

24 fees of its parent, UnitedHealth.  UnitedHealth, United Healthcare and UHIC

25 benefited specifically by enhancing administrative fees they earned through

26 contracts with employee benefit plans.  UnitedHealth at all times benefited through

27 the activities of its subsidiaries.  The ERISA Plans benefited specifically by

28 reducing the amount of benefits payable from funds to the Plaintiff for out-of-

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  network ASC services.  UnitedHealth, United Healthcare and UHIC also benefited

2  when they applied the flawed methodologies to reduce benefits payable from funds

3  that were fully insured by United.

4      135.  Plaintiff is informed and believes that Defendant Ingenix has promoted

5  its flawed systems for calculating non-contracted provider claims as a cost-saving

6  mechanism.  The Defendants all know that Medicare rates, in-network rates, and the

7  Ingenix Database are not appropriate for using to determine UCR rates, and violate

8  the terms of the ERISA Plans that require UCR payment, but have nonetheless

9  relied on this information and shared it with each other to improperly underprice

10 claims.  Regardless, and in furtherance of the goals of the Enterprise, Defendant

11 Ingenix developed these methodologies and used them to target Plaintiff and other

12 ASCs out of network with United.  These actions were taken in furtherance of their

13 efforts to avoid correctly paying according to the UCR rate, for the benefit of the

14 Defendants and the Enterprise as a whole.

15     136.  **Persons.**  The United Defendants are "persons" within the meaning of

16 18 U.S.C. § 1961(3) who conducted, participated in, operated, managed and/or

17 controlled the affairs of the Enterprise through a pattern of racketeering activity, in

18 violation of 18 U.S.C. § 1962(c).  The United Defendants, and each of them,

19 participated in the conduct of the Enterprise for the common purpose of shifting the

20 costs of medical treatment from themselves and the ERISA Plansto the plan

21 members and providers.  Each of the United Defendants performed an important

22 function in the Enterprise's activities that went well beyond their delegated roles as

23 Plan administrators, and well beyond directing only their own affairs.

24     137.  The United Defendants developed and controlled the flawed

25 methodologies for underpricing out of network ASC claims, and promoted it to

26 other members of the Enterprise.  Plaintiff is informed and believes that the ERISA

27 Plans and DOES expressly agreed with United for United to use the flawed Ingenix

28 methodologies to underprice benefits on claims, concealed the use of these flawed

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

43

1146457.1

1   methods for pricing claims from their plan members, and upheld underpayments by

2   reliance on the flawed methodologies.  Alternatively, Plaintiff is informed and

3   believes that the ERISA Plan Defendants and DOES displayed at least a reckless

4   disregard for the truth, because the differences in the amounts payable under

5   United's flawed methodologies and proper UCR rates were so obvious that they

6   knew or should have known that United was using the flawed methodologies to

7   underprice claims.

8        138.   By  propagating the improper methodologies under the guise of

9   providing legitimate administrative services to the ERISA Plans, United directed

10  and controlled the affairs of the Enterprise.  Moreover, through either express

11  agreement or willful blindness, the ERISA Plans and DOES agreed with, and shared

12  in, the common purpose of the Enterprise.

13                  **Predicate Acts of Mail and Wire Fraud**

14       139.   Section 1961(1) of RICO provides that "racketeering activity" includes

15  any act indictable under 18 U.S.C. § 1341 (relating to mail fraud) and 18 U.S.C. §

16  1343 (relating to wire fraud).  18 U.S.C. § 1961(1)(B).  As set forth below, the

17  United Defendants have and continue to engage in conduct violating each of these

18  laws to effectuate their scheme to underpay nonparticipating ASCs such as

19  PLAINTIFFS.

20       140.   In addition, in order to make their scheme effective, each of the United

21  Defendants sought to and did aid and abet each other in violating the above laws

22  within the meaning of 18 U.S.C. § 2.  As a result, their conduct is indictable under

23  18 U.S.C. §§ 1341 and 1343 on this additional basis.

24       141.   For the purpose of executing and/or attempting to execute the above

25  described fraudulent scheme to underpay Plaintiff for services rendered to plan

26  members, by means of false pretenses, representations or promises in connection

27  with determining UCR, the United Defendants, in violation of 18 U.S.C. § 1341,

28  placed in post offices and/or in authorized repositories matter and things to be sent

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  or delivered by the Postal Service, caused matter and things to be delivered by

2  commercial interstate carrier, and received matter and things from the Postal Service

3  or commercial interstate carriers, including, but not limited to, EOBs,

4  authorizations, correspondence (including, but not limited to, appeal denial letters),

5  payments, reports, data, statements, and benefit plan materials.

6      142.   For the purpose of executing or attempting to execute the above

7  described fraudulent scheme to underpay Plaintiff for services rendered to plan

8  members, by means of false pretenses, representations or promises in connection

9  with determining UCR, the United Defendants, in violation of 18 U.S.C. § 1343,

10  transmitted and received by interstate wire, including telephone and internet, matter

11  and things which include, but are not limited to, EOBs, oral or electronic

12  representations of out-of-network benefits, preauthorizations and other service

13  approvals, correspondence, payment summaries, reports, data, statements, faxes, and

14  benefit plan materials.

15      143.   The fraudulent matter and things communicated by the United

16  Defendants, and each of them, via the Postal Service, commercial carrier, wire or

17  other interstate electronic media include, but are not limited to:

18      a.   United represented to Plaintiff, during the verification of benefits
19         process, that out-of-network benefits for ASC services under the health
20         plans would be available at a UCR rate, but failed to disclose that
21         United did not intend to price out-of-network ASC claims according to
       UCR.

22      b.   United falsely represented to Plaintiff and to its patients in plan
23         documents and marketing materials, including on United's website, that
24         United prices the out-of-network ASC claims using an appropriate
       method for determining UCR, when in fact the methods used by United
25         to price claims do not appropriately determine UCR.

26      c.   United falsely represented on EOBs and other documents that it priced
27         the out-of-network ASC claims by determining the UCR rate.  For
       example, the EOBs typically stated that "The reasonable charge is
28         based on **amounts charged** by other providers for similar services or

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

supplies," or some similar language which in the industry context meant UCR reimbursement. Those representations were in fact false in that United did not determine reimbursement rates to out-of-network ASCs by comparing each ASC's charges with the charges of other ASCs for similar services or supplies. United has admitted that it simply calculated ASC rates based upon multiples of "highest in-network rates," Medicare reimbursement schedules or some other method that is inappropriate for determining UCR.

d. United falsely represented that it had priced the ASCs claims using the Ingenix Database. United has now admitted that those representations were in fact false in that the Ingenix Database was not used to price most ASC claims.

e. United falsely represented to Plaintiff and to Plaintiff's patients that the patients owed amounts to the Plaintiff – the difference between the Plaintiff's charges and the amounts paid by Defendants – when in fact the patients did not owe such amounts to the ASCs. By improperly pricing the reimbursement rates to Plaintiff, United has illegally and improperly shifted the liability of paying the claims from themselves to the members.

144. Other matter and things sent through or received from the Postal Service, commercial carrier or interstate wire transmission by United Defendants included information or communications in furtherance of or necessary to effectuate the scheme.

145. Each such use of the mails and each interstate wire communication in furtherance of the fraudulent scheme violated the federal mail fraud and federal wire fraud statutes, 18 U.S.C. §§ 1341 and 1343.

146. The United Defendants' false statements, acts of concealment and failures to disclose were knowing and intentional, had the design and effect of preventing a meaningful evaluation and review of their grounds for benefit determinations, and were otherwise made for the purpose of deceiving ASCs and their patients as part of an ongoing scheme by the Enterprise to underpay out-of-network ASCs.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1146457.1

147.   As fiduciaries and administrators of various health plans, the United Defendants occupied and continue to occupy a position of trust, by which they must accurately represent the terms and conditions of the plans, and to disclose all material facts concerning how plan benefits are priced and determined. Nonetheless, the United Defendants either knew or recklessly disregarded the fact that the false statements and omissions described above were material, and that the ASCs, as well as their patients, would and did detrimentally rely on such false statements and omissions when deciding to provide services, and during the claims adjudication and appeal process.

### Pattern of Racketeering Activity

148.   The United Defendants have engaged in a "pattern of racketeering activity," as defined by 18 U.S.C. § 1961(5), by committing or aiding and abetting in the commission of at least two acts of racketeering activity, *i.e.*, indictable violations of 18 U.S.C. §§ 664, 1341 and 1343, as described above, within a ten-year period.  In fact, each of the United Defendants has committed or aided and abetted in the commission of numerous acts of racketeering activity.  Each act of racketeering activity was related, had a similar purpose, involved the same or similar participants and method of commission, had similar results and impacted the Plaintiff.

149.   The United Defendants, including Ingenix, engaged in a pattern of racketeering by, among other things, making repeated false statements to Plaintiff, as well as the members, that the members had out-of-network benefits that would be priced based on the UCR rate, and that the claims were correctly processed using UCR data, when in fact the claims were incorrectly processed using highest in-network rates, Medicare schedules, the flawed data in the Ingenix Database, or some other flawed method that did not take into account the correct UCR criteria.  On a number of occasions, Plaintiff communicated directly with Ingenix by telephone,

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

1146457.1

1   and was falsely told that Ingenix had reviewed the claim and correctly determined

2   the reimbursement amount based on UCR, when in fact that had not occurred.

3     150. The multiple acts of racketeering activity which the United Defendants

4   committed and/or conspired to commit, or aided and abetted in the commission of,

5   were related to each other and amount to and pose a threat of continued racketeering

6   activity, and therefore constitute a "pattern of racketeering activity" as defined in 18

7   U.S.C. § 1961(5).

8     151. The illegal predicate acts in this case satisfy both the "closed-ended

9   continuity" or the "open-ended continuity" tests. *Allwaste, Inc. v. Hecht*, 65 F. 3d

10  1523, 1527 (9th Cir. 1995). The illegal predicate acts in this case satisfy the

11  "closed-ended continuity" test because they span a "substantial period of time."

12  Plaintiff is informed and believes that United has improperly priced and paid out-of-

13  network ASC claims (including Plaintiff's claims) thousands of times for many

14  years. The illegal predicate acts in this case satisfy the "open-ended continuity" test

15  because United's "past conduct … by its nature projects into the future with a threat

16  of repetition." *Allwaste, supra*, 65 F. 3d at 1528. The predicate acts specifically

17  threaten repetition and have become a "regular way of doing business." *Allwaste,*

18  *supra*, 65 F. 3d at 1528. In this case, the United Defendants' illegal actions are

19  continuing even to this day, and will not cease unless enjoined by this Court.

20  Indeed, it has become a "regular way of doing business" for United to systematically

21  underprice and underpay out-of-network ASC claims, and then to (a) falsely

22  misrepresent they are using appropriate UCR data to price the claims, including that

23  they are using the Ingenix Database when in fact they are not, and (b) falsely

24  represent their members' plan benefits and their members' financial responsibility

25  for more than is provided under the terms of the patients' health benefits plan.

26    152. There are too many examples of United Defendants' predicate acts to

27  detail individually in this complaint without being cumulative. Numerous predicate

28  examples are provided above at Paragraph 206 and sub-paragraphs (a) through (o)

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  therein, which are illustrative of predicate acts committed by Defendants in

2  furtherance of their fraudulent scheme.

3  **<u>Injury</u>**

4      153.   Plaintiff has been injured in its business and property as a proximate

5  result of the United Defendants' violation of 18 U.S.C. § 1962(c), in that Plaintiff

6  provided services to members as a result of the United Defendants' fraudulent

7  statements about out-of-network benefits, and has been underpaid substantial sums

8  for the services rendered to plan members in justifiable reliance on the fraudulent

9  communications it received from the United Defendants concerning pricing and

10  payment of out-of-network benefits.

11      154.   By reason of this violation of 18 U.S.C. § 1962(c), the United

12  Defendants are jointly and severally liable for three times the damages that Plaintiff

13  has sustained, plus costs in this suit, including reasonable attorneys' fees.

14

15  **<u>THIRD CLAIM FOR RELIEF</u>**

16  **Violation of 18 U.S.C. § 1962(d) Based On Predicate Acts Of Mail And Wire**

**Fraud**

17  **(Against All Defendants)**

18

19      155.   The allegations of the prior paragraphs of this Complaint are hereby

repeated as if fully set forth herein.

20

21      156.   As described above, Defendants engaged in a conspiracy to which all

of them agreed, and in which all of them participated, directly or indirectly, in the

22

23  conduct of the affairs of the Enterprise, and the common purpose of the Enterprise.

24  The object of the conspiracy was to underpay claims for services rendered by out-

of-network ASCs such as PLAINTIFFS.  The commonalities between the fraudulent

25

26  statements made to PLAINTIFFS, and the inappropriate methodologies used to

underprice and underpay claims for services rendered to patients who are members

27

28  of plans insured by United and/or who are beneficiaries of the ERISA Plans

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

49
COMPLAINT FOR:

1 | establishes the existence of the conspiracy to violate 18 U.S.C. § 1962(c).

2 | 157.   Each of the ERISA Plans and DOE Defendants agreed to the

3 | commission of a pattern of racketeering activity through the Enterprise as described

4 | above, and agreed to the operation and management of the Enterprise.

5 | 158.   The United Defendants, and each of them, agreed that they would

6 | handle the administering of claims, and in the process make false representations

7 | through the interstate mail and wire channels concerning the manner in which out-

8 | of-network ASC claims (including Plaintiff's claims) are priced.

9 | 159.   The ERISA Plans and DOE Defendants, all of whom had fiduciary

10 | duties to ensure that claims are properly priced and paid, knew that United priced

11 | out-of-network ASC claims in a manner that did not conform with the ERISA plans

12 | and the Defendants' representations concerning UCR.  Plaintiff is informed and

13 | believes that the ERISA Plans and DOE Defendants knew that United made the

14 | above-described false representations regarding the pricing of claims, agreed to

15 | make benefits payments and payment funding based on United's incorrect pricing,

16 | and also agreed to conceal the truth about United's pricing policies and

17 | methodologies to the extent that claims were appealed to the ERISA Plans or DOE

18 | Defendants, or they were otherwise involved in the claims administration process.

19 | 160.   Each of the Defendants was aware of the existence of the overall

20 | scheme and of the participation of others in it, and that the benefits of each were

21 | dependent on the success of the broader fraudulent venture to systematically

22 | underpay out-of-network ASCs by use of flawed data and methodologies that

23 | avoided properly paying based on UCR.  In furtherance of this conspiracy, the

24 | United Defendants committed the predicate acts alleged above, and the ERISA

25 | Plans and DOE Defendants agreed to United's predicate acts, and furthermore

26 | backed up United's fraudulent statements through their involvement in the claims

27 | process, and paid benefits in accordance with United's fraud.

28 | 161.   Plaintiff has been injured in its business and property as a proximate

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

result of this violation of 18 U.S.C. § 1962(d), in that it has incurred significant costs to provide services to the plan members and have underpaid substantial sums for the services rendered to plan members.

162.   By reason of this violation of 18 U.S.C. § 1962(d), all of the Defendants are jointly and severally liable as co-conspirators for all of the damages sustained by Plaintiff, trebled, plus costs in this suit, including reasonable attorneys' fees.

**WHEREFORE**, PLAINTIFFS prays for and demands judgment against the Defendants as set forth above and as follows:

1.   On the First Claim for Relief under ERISA, past due benefits of approximately 43,912,514.29, plus interest, attorneys' fees, and a declaration that PLAINTIFFS are entitled to have the United Defendants and the ERISA Plans:

(a)   compile a valid database of charges by PLAINTIFFS and other similar providers in the same geographic area (the distance that could reasonably be considered appropriate for a member to travel in the same area);

(b)   calculate PLAINTIFFS' past and future benefits pursuant to a valid database that takes into account valid data and, in accordance with the UCR standard, the rates charged by PLAINTIFFS and other similar providers for similar services in the same geographic area at the time;

(c)   determine the UCR rate for PLAINTIFFS' out-of-network services without reference to discounted contract rates applicable to in-network providers;

(d)   determine the UCR rate for PLAINTIFFS' out-of-network services without reference to Medicare rates or schedules;

(e)   determine the UCR rate for PLAINTIFFS' out-of-network services without reference to the California OMFS fee schedule, other rates used for workers' compensation claims, or any other state-imposed fee schedule;

(f)   pay the correct UCR amounts to PLAINTIFFS for past benefit claims that were underpaid;

(g)   pay future PLAINTIFFS benefit claims using an appropriate methodology for determining UCR rates;

(h)   issue new EOBs for past benefit claims, and correct EOBs for

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

future benefit claims, that are in compliance with applicable regulatory notice standards;

(i) implement benefit claims and appeal processes that provide a full, meaningful and independent review of benefit determinations, and that are consistent and substantially in compliance with ERISA regulations and the terms of the Health Plans; and

(j) cease and desist from employing policies and procedures designed to deny or to unduly obstruct, hamper, and delay PLAINTIFFS' right to appeal the benefit determinations as to its submitted claims.

2.     On the Second and Third Claims for Relief under RICO, three times the damages sustained by Plaintiff as a result of the fraudulent and unlawful conduct complained of, such amount to be determined at trial, plus costs and attorneys' fees;

3.     For the awarding prejudgment interest and costs, including attorneys' fees; and

4.     For the awarding of such other relief as the Court deems just and proper

DATED: September 26, 2013        HOOPER, LUNDY & BOOKMAN, P.C.


By:  _____
                DARON L. TOOCH
       Attorneys for Bay Area Surgical Group, Inc.,
       Knowles Surgery Center, LLC, National
       Ambulatory Surgery Center, LLC, Los Altos
       Surgery Center, LP

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1146457.1

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____John A. Kronstadt_____ and the assigned Magistrate Judge is _____Jacqueline Chooljian_____ .

The case number on all documents filed with the Court should read as follows:

### 2:13-CV-7146-JAK (JCx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

September 26, 2013
_____
Date

By MDAVIS _____
Deputy Clerk

_____

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

☐ Western Division
312 N. Spring Street, G-8
Los Angeles, CA 90012

☐ Southern Division
411 West Fourth St., Ste 1053
Santa Ana, CA 92701

☐ Eastern Division
3470 Twelfth Street, Room 134
Riverside, CA 92501

**Failure to file at the proper location will result in your documents being returned to you.**

_____

CV-18 (08/13)        NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAY AREA SURGICAL GROUP, INC., ET AL | CASE NUMBER |
| | 2:13-CV-7146-JAK (JCX) |
| PLAINTIFF(S) | |
| v. | |
| UNITED HEALTHCARE SERVICES, INC., ET AL | **NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM** |
| DEFENDANT(S) | |

**NOTICE TO PARTIES:**

It is the policy of this Court to encourage settlement of civil litigation when such is in the best interest of the parties. The Court favors any reasonable means, including alternative dispute resolution (ADR), to accomplish this goal. *See* Civil L.R. 16-15. Unless exempted by the trial judge, parties in all civil cases must participate in an ADR process before trial. *See* Civil L.R. 16-15.1.

The district judge to whom the above-referenced case has been assigned is participating in an ADR Program that presumptively directs this case to either the Court Mediation Panel or to private mediation. *See* General Order No. 11-10, §5. For more information about the Mediation Panel, visit the Court website, www.cacd.uscourts.gov, under "ADR."

Pursuant to Civil L.R. 26-1(c), counsel are directed to furnish and discuss with their clients the attached ADR Notice To Parties *before* the conference of the parties mandated by Fed.R.Civ.P. 26(f). Based upon the consultation with their clients and discussion with opposing counsel, counsel must indicate the following in their Joint 26(f) Report: 1) whether the case is best suited for mediation with a neutral from the Court Mediation Panel or private mediation; and 2) when the mediation should occur. *See* Civil L.R. 26-1(c).

At the initial scheduling conference, counsel should be fully prepared to discuss their preference for referral to the Court Mediation Panel or to private mediation and when the mediation should occur. The Court will enter an Order/Referral to ADR at or around the time of the scheduling conference.

Clerk, U. S. District Court

| | |
|---|---|
| September 26, 2013 | By  MDAVIS |
| Date | Deputy Clerk |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## NOTICE TO PARTIES: COURT POLICY ON SETTLEMENT
## AND USE OF ALTERNATIVE DISPUTE RESOLUTION (ADR)
### Counsel are required to furnish and discuss this Notice with their clients.

Despite the efforts of the courts to achieve a fair, timely and just outcome in all cases, litigation has become an often lengthy and expensive process. For this reason, it is this Court's policy to encourage parties to attempt to settle their disputes, whenever possible, through alternative dispute resolution (ADR).

ADR can reduce both the time it takes to resolve a case and the costs of litigation, which can be substantial. ADR options include mediation, arbitration (binding or non-binding), neutral evaluation (NE), conciliation, mini-trial and fact-finding. ADR can be either Court-directed or privately conducted.

The Court's ADR Program offers mediation through a panel of qualified and impartial attorneys who will encourage the fair, speedy and economic resolution of civil actions. Panel Mediators each have at least ten years of legal experience and are appointed by the Court. They volunteer their preparation time and the first three hours of a mediation session. This is a cost-effective way for parties to explore potential avenues of resolution.

This Court requires that counsel discuss with their clients the ADR options available and instructs them to come prepared to discuss the parties' choice of ADR option (settlement conference before a magistrate judge; Court Mediation Panel; private mediation) at the initial scheduling conference. Counsel are also required to indicate the client's choice of ADR option in advance of that conference. *See* Civil L.R. 26-1(c) and Fed.R.Civ.P. 26(f).

Clients and their counsel should carefully consider the anticipated expense of litigation, the uncertainties as to outcome, the time it will take to get to trial, the time an appeal will take if a decision is appealed, the burdens on a client's time, and the costs and expenses of litigation in relation to the amounts or stakes involved.

With more than 15,000 civil cases filed in the District in 2012, less than 1 percent actually went to trial. Most cases are settled between the parties; voluntarily dismissed; resolved through Court-directed or other forms of ADR; or dismissed by the Court as lacking in merit or for other reasons provided by law.

For more information about the Court's ADR Program, the Mediation Panel, and the profiles of mediators, visit the Court website, www.cacd.uscourts.gov, under "ADR."

**COPY**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐) <br> Bay Area Surgical Group, Inc.; Knowles Surgery Center, LLC, National Ambulatory Surgery Center, LLC, Los Altos Surgery Center, LP | **DEFENDANTS** <br> United Healthcare Services, Inc.; United Healthcare Insurance Company; Unitedhealth Group, Inc., Ingenix, Inc., and DOES 1 through 10 |
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) <br> Daron Tooch (SBN 137269) <br> Hooper, Lundy & Bookman, P.C. <br> 1875 Century Park East, Suite 1600 <br> Los Angeles, CA 90067 <br> tel: (310) 551-8111 fax: (310) 551-8181 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No       ☒ **MONEY DEMANDED IN COMPLAINT: $** 43,912,514.00

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

11 U.S.C. § 1132(a)(1)(B)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☒ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | **REAL PROPERTY** | ☐ 445 American with Disabilities – Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities – Other | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | | ☐ 220 Foreclosure | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 894 Energy Allocation Act | | ☐ 230 Rent Lease & Ejectment | **IMMIGRATION** | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus-Alien Detainee | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | | | ☐ 440 Other Civil Rights | | ☐ 871 IRS-Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:** Case Number:        **CV13-07146**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                          CIVIL COVER SHEET                          Page 1 of 2

American LegalNet, Inc. <br> www.FormsWorkflow.com

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ No ☐ Yes
If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☐ No ☒ Yes
If yes, list case number(s):   12-CV-02916 PSG

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☒ A. Arise from the same or closely related transactions, happenings, or events; or
☒ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☒ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Santa Clara County |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Santa Clara County |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Santa Clara County |

\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):**  _[signature]_        Date September 26, 2013
Daron Tooch

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

American LegalNet, Inc.
www.FormsWorkflow.com

00/00/2013 12:19:27 FAX 2132499990        NATIONWIDE LEGAL       3

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com

00/00/2013  12:19:27 FAX 2132499990                    NATIONWIDE LEGAL

1



AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Bay Area Surgical Group, Inc.; Knowles Surgery Center, LLC, National Ambulatory Surgery Center, LLC, Los Altos Surgery Center, LP | ) ) ) ) ) | |
| *Plaintiff(s)* | ) | Civil Action No. **CV13-07146** -JAK (JCx) |
| v. | ) ) | |
| United Healthcare Services, Inc.; United Healthcare Insurance Company; Unitedhealth Group, Inc., Ingenix, Inc., and DOES 1 through 10 | ) ) ) ) ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

United Healthcare Services, Inc.
United Healthcare Insurance Company
Unitedhealth Group, Inc.
Ingenix, Inc.

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:
Daron L. Tooch, Esq. (SBN 137269)
HOOPER, LUNDY & BOOKMAN, P.C.
1875 Century Park East, Suite 1600
Los Angeles, CA 90067
Tel: (310) 551-8111
Fax: (310) 551-8181

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:  SEP 2 6 2013                                    MARILYN DAVIS
                                                       _____
                                                       *Signature of Clerk or Deputy Clerk*



00/00/2013   12:19:27 FAX 2132499990          NATIONWIDE LEGAL                                    2

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

### PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 _____

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

